UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHNNY SCHULTZ,

        Plaintiff,                   CIVIL ACTION NO. 15-12473

        v.                           DISTRICT JUDGE JOHN CORBETT O'MEARA

COMMISSIONER OF           MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

### REPORT AND RECOMMENDATION

Plaintiff Johnny Schultz seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to social security disability benefits under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 11) and Defendant's Motion for Summary Judgment (docket no. 12).  The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket no. 2.)  The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

### I.    RECOMMENDATION

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 11) be GRANTED and Defendant's Motion for Summary Judgment (docket no. 12) be DENIED.  It is further recommended that this matter be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a proper assessment of the treating physicians' opinions.

## II. PROCEDURAL HISTORY

Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning April 19, 2012. (TR 82-85.) The Social Security Administration initially denied Plaintiff's claims on December 21, 2012, and Plaintiff requested a *de novo* hearing. (TR 28-36.) On September 5, 2013, Plaintiff appeared with a representative and testified at a hearing before Administrative Law Judge (ALJ) James A. Horn. (TR 380-397.) In a February 27, 2014 decision, the ALJ found that Plaintiff was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy. (TR 22-23.) The Appeals Council declined to review the ALJ's decision (TR 1-5), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently before the Court.

## III. HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 11-2 at 2-8), and the ALJ (TR 18-22) each set out a detailed, factual recitation with regard to Plaintiff's medical record and the hearing testimony. The Commissioner indicated that it adopted the facts as stated in the hearing decision and referenced in its motion. (Dkt. 12 at 2.) Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, the undersigned will incorporate these factual recitations by reference. Additionally, the undersigned will include comments and citations to the record as necessary throughout this Report and Recommendation.

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since April 19, 2012, the alleged onset date, and that Plaintiff suffered from the following severe

impairments: inflammatory arthritis in multiple joints and obesity. (TR 18.) Next, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ then found that Plaintiff had the residual functional capacity (RFC) to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). (TR 19.) Next, the ALJ determined that Plaintiff was unable to perform his past relevant work as a siding installer or construction laborer. (TR 22.) Subsequently, in reliance on the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 22-23.) Therefore, the ALJ found that Plaintiff had not been under a disability as defined in the Social Security Act from April 19, 2012, through the date of the decision. (TR 23.)

## V.     LAW AND ANALYSIS

### A.     Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

**B.      Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)    Plaintiff was not presently engaged in substantial gainful employment; and

(2)    Plaintiff suffered from a severe impairment; and

(3)    the impairment met or was medically equal to a "listed impairment;" or

(4)    Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past

work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing.  42 U.S.C. § 405(g).  Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and/or remanded under sentence four because (1) the ALJ failed to properly weigh the medical opinion evidence and failed to properly

5

determine Plaintiff's RFC; and (2) the ALJ failed to properly evaluate Plaintiff's credibility. (Docket no. 11-2 at 9-17.)

*1. Medical Opinion Evidence*

Plaintiff first argues that the ALJ impermissibly discounted the opinion of his treating rheumatologist, Dr. Irene Kazmers, M.D. In an opinion dated January 21, 2013, Dr. Kazmers noted that Plaintiff was treated for polymyalgia that was refractory to treatment. (Tr. 252.) At that time, Plaintiff's symptoms included severe joint pain and limited motion of the upper and lower extremity joints. He had prolonged stiffness that lasted between two to four hours every morning. Dr. Kazmers noted that Plaintiff's symptoms flared every time she tried to decrease his dose of steroids. Dr. Kazmers also noted an elevated sedimentation rate, and the presence of Iatrogenic Cushing's syndrome, which caused symptoms of tremor, anxiety, hypertension, weight gain, and acne. Dr. Kazmers opined that Plaintiff's conditions limited the use of his upper and lower extremities and prevented him from doing a job that required sitting. (*Id*.) Dr. Kazmers believed that Plaintiff's condition would persist for at least the next 12 months. (Tr. 253.)

On April 23, 2013, Dr. Kazmers provided a comprehensive opinion regarding Plaintiff's functional limitations. (Tr. 347-354.) In that Multiple Impairment Questionnaire, Dr. Kazmers noted that as a result of Plaintiff's impairments he was only able to sit one-to-two hours in an eight hour day, and stand or walk two-to-three hours per day. (Tr. 349.) Further, it would be necessary for Plaintiff to not sit continuously in a work setting and he should get up and move around every two hours. (*Id*.) Dr. Kazmers indicated that Plaintiff should never lift over 20 pounds and could only occasionally carry 10-20 pounds, but never over 20 pounds. (*Id*.) Plaintiff was also noted to have significant limitations in doing repetitive reaching, handling,

fingering and lifting. (*Id*.) Specifically in this regard, Dr. Kazmers noted that plaintiff's pain level was an eight on a one-to-10 scale, experiencing arm and shoulder pain, particularly morning stiffness for two-to-four hours. (Tr. 350.) Dr. Kazmers also noted that Plaintiff had moderate limitations in grasping, turning, and twisting objects. (*Id*.) Plaintiff's symptoms were also noted to likely increase if placed in a competitive work environment. (Tr. 351.) Dr. Kazmers further opined that Plaintiff would require unscheduled breaks to rest at unpredictable intervals on a daily basis, and estimated that Plaintiff would be absent from work more than three times per month. (Tr. 352-53.)

Plaintiff also argues that the ALJ impermissibly discounted the opinion of his treating physician, Dr. Raj Rao, M.D. Dr. Rao completed a Multiple Impairment Questionnaire on May 29, 2013. (Tr. 355-362.) In it, Dr. Rao diagnosed polymyalgia rheumatica. (Tr. 355.) Clinical findings included generalized musculoskeletal pain, mostly in Plaintiff's lower extremities. (*Id*.) Plaintiff's primary symptoms included pain, fatigue, and myalgias. (Tr. 356.) His pain was noted to be moderately severe, ranking a seven on a 10-point scale, and his fatigue rated severe, a 10 on a 10-point scale. (Tr. 357.) Dr. Rao specified that the limitations detailed in his report began in March 2012. (Tr. 361.) Plaintiff's prognosis was deemed to be "fair-poor." (Tr. 355.) With respect to Plaintiff's functional limitations, Dr. Rao opined that Plaintiff was able to sit less than one hour and stand/walk less than one hour in an eight hour work day. (Tr. 357.) He could occasionally lift and carry five-to-ten pounds. (Tr. 358.) However, Plaintiff also had significant limitations performing repetitive reaching, handling, fingering, and lifting due to back pain. (*Id*.) Dr. Rao also assessed Plaintiff as being markedly limited in his ability to grasp, turn, and twist objects, and reach; and moderately limited in the ability to perform fine manipulations. (Tr. 358-359.) Plaintiff's pain, fatigue, or other symptoms were "constantly" severe enough to interfere

7

with attention and concentration. (Tr. 360.) Dr. Rao agreed with Dr. Kazmers that Plaintiff was not a malingerer. (*Id.*) Plaintiff was found to be incapable of tolerating even low stress at work. He also required unscheduled breaks to rest four-to-20 times per day, and would miss work more than three times per month due to his impairments or treatment. (Tr. 361.)

The ALJ's discussion of Dr. Kazmers' and Dr. Rao's opinions are reproduced below in their entireties:

> As for the opinion evidence, the extent of limitation suggested by Dr. Rao at Exhibit 8F is not supported by the objective medical record and is not accorded controlling weight in this matter. This level of limitation is also inconsistent with the claimant's reported activities (Exhibit 6E) and with the opinion of Dr. Kazmers, who reported improvement in the claimant's athragias with steroids and assessed greater functional abilities at Exhibit 7F. Notwithstanding, Dr. Kazmers medical source statement at Exhibit 7F is not accorded great or controlling weight in this matter as his suggested level of limitation is also inconsistent with the medical record which shows lumbosacral spine tenderness but no neurological deficits and improvement in flares with prednisone.
>
> The cursory statement of Dr. Kazmers at Exhibit 5F, p. 3 (also duplicated in the record) is not entitled to great or controlling weight in this matter. The doctor stated that [t]he claimant would be unable to be gainful employed for the foreseeable future, greater than 12 months, due to symptoms of widespread joint pain and stiffness and chronic low back pain which interfere with activity tolerance and the ability to sit for periods of time as for sedentary work. The doctor did not provide specific functional limitations supported by objective findings but rather, simply stated that the claimant could not perform sedentary work. It is noted that the issue of disability is reserved to the Commissioner of Social Security (SSR 00-03p ).

(TR 21.)

Plaintiff asserts that the ALJ's reasoning for discounting his treating physicians' opinions is conclusory and without sufficient supporting rationale. This Court agrees.

It is well settled that the opinions of treating physicians are generally accorded substantial deference. In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other

substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to assign that opinion in light of several factors: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

There is no *per se* rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Norris v. Comm'r of Soc. Sec.*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)). An ALJ's failure to discuss the requisite factors may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 547 (6th Cir. 2004)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that

weight." *Wilson*, 378 F.3d at 544 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). The district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician's opinion and provide good reasons for that weight. *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

First, with respect to the opinion of Dr. Kazmers, the ALJ points to Exhibit 5F, where Dr. Kazmers indicates that "Plaintiff [is] unable to be substantially, gainfully employed for the foreseeable future x > 12 months due to symptoms of widespread joint pain and stiffness and chronic low back pain which interfere both with activity tolerance and also interfere with ability to sit for periods of time as for sedentary work." (Tr. 21.) The ALJ discounts this opinion because "[t]he doctor did not provide specific functional limitations supported by objective findings." (*Id.*) Notwithstanding whether this statement on its own can be considered a medical opinion, on April 23, 2013, Dr. Kazmers provided a detailed functional limitation statement regarding Plaintiff's functional limitations. (Tr. 347-354.) However, the ALJ discounts this opinion evidence because it is "inconsistent with the medical record which shows lumbosacral spine tenderness but no neurological deficits and improvement in flares with prednisone." (Tr. 21.)

The ALJ's explanation for discounting Dr. Kazmers opinion in the instant matter is similar to that in *Gayheart v. Comm'r of Soc. Sec.*, for which that case was remanded. 710 F.3d 365 (6th Cir. 2013). In *Gayheart*, the ALJ discounted the treating physician's opinions on the

10

grounds that they were "not well-supported by any objective findings" and were "inconsistent with other credible evidence." 710 F.3d at 376. The Sixth Circuit found that those were not good reasons because the ALJ's first line of reasoning was ambiguous and because the ALJ did not support his second line of reasoning by specifically identifying the evidence that was purportedly inconsistent with the treating physician's opinions. *Id*. at 376-77. While the ALJ here offers a one-sentence explanation, like the ALJ in *Gayheart*, the ALJ here cites no record evidence to support her conclusion that Dr. Kazmers' opinion is inconsistent with the hearing testimony and the medical record. The ALJ's cursory conclusion makes review nearly impossible without requiring the Court to cull through the record and find the evidence upon which the ALJ purportedly relies. *See Gayheart*, 710 F.3d at 376 (explaining that the reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight). The undersigned notes that "[t]his requirement is not simply a formality; it is to safeguard the claimant's procedural rights. It is intended 'to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that [ ]he is not. Significantly, the requirement safeguards a reviewing court's time, as it 'permits meaningful' and efficient 'review of the ALJ's application of the [treating physician] rule.'" *Cole,* 661 F.3d at 937–38 (internal citations omitted). The undersigned concludes that the ALJ in the instant matter did not provide good reasons for discounting Dr. Kazmers' opinion, as it is not sufficiently specific to explain the reasoning behind the decision, particularly where Plaintiff has presented competing evidence. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 245-46 (6th Cir. 2007) (An ALJ's explanation

11

that "the record does not support the limitations of the severity suggested by [the claimant's treating physician]" is inadequate to satisfy the notice requirement discussed in Social Security Ruling (SSR) 96-7p.).

The ALJ discounted Dr. Rao's opinion because it was "not supported by the objective medical record and is not accorded controlling weight in this matter." (Tr. 21.) The ALJ went on to say that Plaintiff's level of limitation was also inconsistent with Plaintiff's reported activities and with the opinion of Dr. Kazmers. (*Id.*) As an initial matter, the undersigned is troubled that the ALJ has not noted what weight he has assigned Dr. Rao's opinion, which makes any type of meaningful review difficult, if not impossible.[1] Indeed, it is well-settled that the opinion of a treating physician is generally accorded substantial deference. In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When an ALJ determines that a treating source's medical opinion is not controlling, he must determine *how much weight* to assign that opinion in light of several factors noted as noted by 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *See Wilson*, 378 F.3d at 544 (citing SSR Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *5 (1996) (the ALJ's good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers *the weight the adjudicator gave to the treating source's medical opinion* and the reasons for that weight.") (emphasis added).

---

[1] The undersigned notes that the ALJ's assessment of Dr. Kazmers' opinion suffers from the same flaw. Indeed, in discounting Dr. Kazmers' opinion, the ALJ indicated that her opinion was not entitled to "great or controlling weight," yet the ALJ did not go on to assign a specific weight to the Dr. Kazmer's opinion, e.g., some weight, limited weight, no weight, etc. (Tr. 21.)

The undersigned concludes that even if the ALJ had properly determined that Dr. Rao's opinion was not entitled to controlling weight, he failed to make clear how much weight he assigned to his opinion based on the factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). Moreover, as this Court has recently held, the ALJ's focus on the Plaintiff's ability to do certain activities in discounting Dr. Rao's opinion does not constitute "good reasons" when the claimant's testimony and other record evidence contradict the ALJ's findings. *See Johnson v. Comm'r Soc. Sec.*, 652 F.3d 646, 652 (6th Cir. 2011).

The undersigned also agrees with Plaintiff that the ALJ impermissibly relied on consulting examiner, Dr. Eric Vander Haagen's opinion. As pointed out by Plaintiff, the consulting examiner reviewed Plaintiff's file on December 20, 2012 (Tr. 31-33.) At that time, it does not appear that any of the evidence after Plaintiff's onset date was included in the file. In fact, the ALJ acknowledges that new evidence had been "admitted into the record since the DDS physicians rendered their opinions, which obviously diminishes the value of those opinions." (Tr. 22.) Nevertheless, the ALJ concluded that those opinions were "persuasive that the claimant is capable of a light residual functional capacity." (Tr. 22.) The ALJ did not undertake any critical analysis of how Dr. Vander Haagen or any other examiner's conclusions could reasonably override the findings and conclusions of plaintiff's treating physicians. Indeed, the opinion from a non-treating, non-examining consultant who reviewed an incomplete file cannot supplant the well-supported opinion from a treating physician, one of whom is a relevant specialist. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (holding that the non-examining sources were not substantial evidence in light of fact that they reviewed a significantly incomplete record); Social Security Ruling ("SSR") 96-6p (1996 WL 374180)

13

(opinions from a non-examining source may outweigh a treating specialist if they review a "complete case record that includes a medical report from a specialist").

Defendant argues that the ALJ did provide good reasons for rejecting the treating physicians' opinions and submits analysis and citations to the record in support of the ALJ's conclusions. (Docket no. 12 at 9-14.) But Defendant's post-hoc rationalization of the ALJ's assessment of Drs. Kazmers and Rao's opinions does not cure the ALJ's failure to provide good reasons. *See Christephore v. Comm'r of Soc. Sec.*, No. 11-13547, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012) (Roberts, J.) ("[I]t is not the Court's job to conduct a *de novo* review of the evidence or to rubber stamp the ALJ's decision. The Court must ensure both that the ALJ applied the correct legal standard and that his decision is supported by substantial evidence. Moreover, it is the ALJ's rationale that is under review, not defense counsel's."). Accordingly, remand of this matter for a proper assessment of Drs. Kazmers' and Raos's opinions are warranted.

Although ultimately a finding of no disability is possible in this case, substantial evidence does not exist on the record to support the current RFC. Under these circumstances, the undersigned concludes that a remand is necessary for a proper assessment of Drs. Kazmers' and Rao's opinions.

### 2. *Credibility Assessment*

Given the above conclusions, the ALJ will have to re-assess plaintiff's credibility depending on the conclusions the ALJ reaches on remand regarding plaintiff's RFC. As such, the undersigned will not assess plaintiff's argument on this point now.

## VI. CONCLUSION

For the reasons stated herein, the Court should GRANT Plaintiff's Motion for Summary Judgment (docket no. 11) and DENY Defendant's Motion for Summary Judgment (docket no. 12). This matter should be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a proper assessment of the treating physicians' opinions.

## **REVIEW OF REPORT AND RECOMMENDATION**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 10, 2016         s/ Mona K. Majzoub
                               MONA K. MAJZOUB
                               UNITED STATES MAGISTRATE JUDGE

15

## **PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: August 10, 2016		s/ Lisa C. Bartlett
		Case Manager